**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

RODERICK L. MITCHELL,                           No. CIV S-08-2284-CMK-P

              Plaintiff,

      vs.                                                    FINDINGS AND RECOMMENDATIONS

ROXAN SANDERS, et al.,

              Defendants.

_____/

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.   Pending before the court is Defendants' motion to dismiss (Doc. 16). Plaintiff filed an opposition to the motion (Doc. 17).

        In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

1

1  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

2  (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

3  lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

4          Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

5  the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

6  and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

7  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

8  failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

9  recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

10 raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain

11 "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has

12 facial plausibility when the plaintiff pleads factual content that allows the court to draw the

13 reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at

14 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

15 than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S.

16 at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

17 it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id.

18 (quoting Twombly, 550 U.S. at 557).

19         In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

20 outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

21 Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)

22 documents whose contents are alleged in or attached to the complaint and whose authenticity no

23 party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

24 and upon which the complaint necessarily relies, but which are not attached to the complaint, see

25 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

26 of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

1  1994).

2  Defendants bring this motion on the basis that Plaintiff's complaint fails to state a

3  claim for which relief can be granted.  Defendants claim Plaintiff's allegations are insufficient to

4  state a claim for violation of the Eighth Amendment.  Rather, Plaintiff alleges nothing more than

5  a difference in opinion as to proper medical treatment, specifically the proper type of wrist splints

6  for his carpal tunnel.  In addition, Defendants argue that Plaintiff's claims against the supervisory

7  doctors are insufficient as Plaintiff fails to allege that they had actual knowledge of his condition

8  or participated in Plaintiff's treatment any affirmative way.  Finally, Defendants argue the claims

9  arising out of the inmate grievance process are insufficient.

10  In response, Plaintiff argues that defendants Sanders and Sabin interfered with the

11  treatment prescribed by an outside orthopedic surgeon and denied Plaintiff the proper treatment

12  for his wrists.  He states defendants Bick and Andreason, the supervising doctors, were

13  responsible for approving all surgeries and medical supply needs, and signed off of Plaintiff's

14  treatment.  He claims defendant Grannis is liable under a respondeat superior theory in that

15  through the inmate grievance process she reviewed Plaintiff's medical file and chose to sign off

16  on the improper medical treatment.

17  A.    Medical Treatment

18  The treatment a prisoner receives in prison and the conditions under which the

19  prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

20  and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

21  511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of

22  dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

23  (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

24  Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

25  "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

26  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

1  when two requirements are met: (1) objectively, the official's act or omission must be so serious

2  such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

3  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

4  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

5  official must have a "sufficiently culpable mind."  See id.

6          Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

7  injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

8  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

9  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

10  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

11  injury or the "unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050,

12  1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

13  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

14  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

15  activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

16  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

17          The requirement of deliberate indifference is less stringent in medical needs cases

18  than in other Eighth Amendment contexts because the responsibility to provide inmates with

19  medical care does not generally conflict with competing penological concerns.  See McGuckin,

20  974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

21  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

22  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

23  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

24  treatment, or interference with medical treatment, may also constitute deliberate indifference.

25  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

26  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

1    Negligence in diagnosing or treating a medical condition does not, however, give

2    rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

3    difference of opinion between the prisoner and medical providers concerning the appropriate

4    course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

5    90 F.3d 330, 332 (9th Cir. 1996).

6    As the court reads Plaintiff's complaint, it appeared he was claiming the

7    defendants failed to offer Plaintiff any treatment for his wrists.  However, as clarified in his

8    opposition to the motion to dismiss, it appears he is actually alleging that defendants Sanders and

9    Sabin provided medical treatment for his wrists, but did so in a different manner than was

10   recommended by another physician.  He states defendants Sanders and Sabin denied him "proper

11   wrist splints."  Nowhere does Plaintiff actually allege the failure to provide any treatment for his

12   medical condition.  Plaintiff also alleges that he was denied the wrist splints he wanted due to

13   institutional security reasons.  This allegation itself defeats a claim for medical indifference, in

14   that if the reason given for not providing a specific wrist splint related to institutional security

15   and safety, there is no showing that the doctor acted with the intention of inflicting Plaintiff harm

16   or in complete disregard to Plaintiff's medical needs.  Instead, the doctors did provided Plaintiff

17   with wrist splints, just not the one Plaintiff believes he needed.

18   Differing medical opinions is insufficient to state a claim for medial indifference.

19   Here, instead of denying Plaintiff any treatment at all, the defendants did provided treatment; it

20   was just treatment that was different from what Plaintiff wanted.  Even if that treatment was

21   ineffective, Plaintiff's claims are insufficient to raise to the level of an Eighth Amendment

22   violation. Therefore, Plaintiff fails to state a claim against either defendant Sanders or Sabin.

23   B.    Supervisory Defendants

24   Supervisory personnel are generally not liable under § 1983 for the actions of their

25   employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

26   respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

1    violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

2    Supreme Court has rejected the notion that a supervisory defendant can be liable based on

3    knowledge and acquiescence in a subordinate's unconstitutional conduct because government

4    officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

5    and not the conduct of others.  See Iqbal, 129 S. Ct. at 1949.  When a defendant holds a

6    supervisory position, the causal link between such defendant and the claimed constitutional

7    violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

8    Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

9    concerning the involvement of supervisory personnel in civil rights violations are not sufficient.

10   See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that

11   each Government-official defendant, through the official's own individual actions, has violated

12   the constitution."  Iqbal, 129 S. Ct. at 1948.

13          Here, Defendants argue the complaint fails to state a claim against defendants

14   Bick and Andreason as the allegations are solely predicated upon their position as supervisors,

15   under a theory of respondeat superior.

16          In his opposition, Plaintiff also clarifies his claims against defendants Bick and

17   Andreason.  He states these defendants should be held liable because they signed off on his 602

18   inmate appeal process.  As the Supreme Court has now made clear, such a claim is insufficient.

19   As set forth above, a supervisory defendant can only be held liable for his or her own conduct,

20   not due to their review of another's.  Plaintiff does not allege any actual, personal involvement in

21   his medical treatment by either defendant Bick or Andreason.  Reviewing a inmate grievance is

22   insufficient to impose liability on a supervisor.  Therefore, Plaintiff fails to state a claim against

23   either defendant Bick or Andreason.

24          C.      Grievance

25          Prisoners have no stand-alone due process rights related to the administrative

26   grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

6

1  Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

2  inmates to a specific grievance process).  Because there is no right to any particular grievance

3  process, it is impossible for due process to have been violated by ignoring or failing to properly

4  process grievances.   Numerous district courts in this circuit have reached the same conclusion.

5  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

6  process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863

7  (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

8  grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL

9  29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process

10  a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967

11  (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

12  properly failed to state a claim under § 1983).  Prisoners do, however, retain a First Amendment

13  right to petition the government through the prison grievance process.  See Bradley v. Hall, 64

14  F.3d 1276, 1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in

15  certain circumstances, implicate the First Amendment.

16         Defendants argue the claims against defendant Grannis relate solely to the inmate

17  grievance appeal process, and there can be no liability for such actions.  Plaintiff again clarifies

18  his claim against defendant Grannis in his opposition.  He specifically states defendant Grannis

19  acted as a respondeat superior to defendants Bick and Andreason.  Thus he is attempting to hold

20  defendant Grannis liable for the acts of others under that theory, which is insufficient.  Defendant

21  Grannis' only acts related to Plaintiff arise from her review of his inmate appeal.  There are no

22  allegations that she impinged Plaintiff's ability to petition for redress, only that she denied his

23  appeal.  Such allegations are insufficient to state a claim.

24         D.    Qualified Immunity

25         In addition, Defendants argue they are entitled to qualified immunity because

26  there was no violation of Plaintiff's constitutional rights, as discussed above.

1    Government officials enjoy qualified immunity from civil damages unless their

2    conduct violates "clearly established statutory or constitutional rights of which a reasonable

3    person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

4    qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

5    law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

6    immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting

7    the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See

8    Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next

9    step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken

10   in light of the specific context of the case, not as a broad general proposition . . . ." Id.  "[T]he

11   right the official is alleged to have violated must have been 'clearly established' in a more

12   particularized, and hence more relevant, sense:  The contours of the right must be sufficiently

13   clear that a reasonable official would understand that what he is doing violates that right." Id. at

14   202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable

15   officer in similar circumstances would have thought his conduct violated the alleged right.  See

16   id. at 205.

17          Here, the undersigned agrees, as discussed above, that there was no constitutional

18   violation.  As such, a qualified immunity discussion is unnecessary.   There are no other grounds

19   offered for finding qualified immunity, such as whether the constitutional right was clearly

20   established or whether a reasonable official in a similar situation could have "reasonably but

21   mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton,

22   268 F.3d 646, 651 (9th Cir. 2001).  The undersigned therefore finds a finding of qualified

23   immunity is unnecessary.

24          E.      Unserved Defendant

25          Finally, one defendant remains unserved in this action.  Plaintiff alleges defendant

26   Whitney, an occupational therapist, told him the correct wrist splints he needed were

1    discontinued and she issued him different wrist splints which did not supply the necessary

2    support Plaintiff needed.  He claims she is not a doctor, and was unqualified to modify the

3    prescription for his wrist splints.

4            Service of process for defendant Whitney was returned unexecuted.  The court

5    then directed Plaintiff to obtain the necessary service information in order for the U.S. Marshal to

6    serve defendant Whitney.  Plaintiff filed a request for assistance in obtaining the necessary

7    information.  However, given the discussion herein, the court finds summary dismissal of the

8    claims against defendant Whitney to be appropriate.[1]

9            As with the allegations against the other defendants in this case, there is no

10   allegation that defendant Whitney actually acted with any intentional disregard of his medical

11   condition or with the intention of inflicting harm on Plaintiff.  Rather, according to Plaintiff's

12   allegations, defendant Whitney provided Plaintiff wrist splints, just not the ones he wanted or

13   believed he needed.  Even if the splints defendant Whitney provided Plaintiff were not the

14   specific splints the doctors had prescribed, which does not appear to be the case, his allegations

15   raise more of a difference in opinion claim than intentional disregard claim.  Plaintiff states the

16   reason defendant Whitey did not provide the splints he stated he required was because they were

17   discontinued.  There is nothing in the complaint which the court could read to indicate there was

18   a deliberate intention to deny Plaintiff proper medical treatment or cause him harm.  Even if

19   defendant Whitney acted beyond her knowledge, at best Plaintiff's claims would be that

20   defendant was negligent in her position.  As discussed above, negligence is insufficient to raise a

21   claim under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

22   / / /

23

24           [1]      In addition, Federal Rule of Civil Procedure 4(m) requires service to be completed
     within 120 days after the complaint is filed.  Here, service of the complaint was authorized on
25   March 26, 2009.  More than 120 days has passed.  Plaintiff has made no showing of any attempts
     he has made to obtain service information for defendant Whitney, other than requesting
26   assistance by the court.

F.     Conclusion

Based on the foregoing, the undersigned recommends that:

1.     Defendants' motion to dismiss (Doc. 16) be granted;

2.     Defendant Whitney be dismissed from this action for failure to state a claim and failure to serve; and

3.     The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  July 12, 2010

                                    _____
                                    CRAIG M. KELLISON
                                    UNITED STATES MAGISTRATE JUDGE